UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION



FILED
2016 DEC 28 PM 3: 25
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

| | | |
|---|---|---|
| **PHILLIP TATE**<br>Mailing Address: 1192<br>Crestview Ave.,<br>Akron, OH 44320 | : <br> : <br> : <br> : <br> : | Case No. **5:16 CV 3090** <br><br> JUDGE **JUDGE ADAMS** <br><br> **MAG. JUDGE BURKE** |
| Plaintiff | : | |
| vs. | : | MAGISTRATE JUDGE |
| | : | |
| **AYANA COMRIE**, a/k/a/<br>"MS. RED PEN," Coordinator,<br>SUMMIT COUNTY REENTRY<br>NETWORK<br>1040 Tallmadge Ave.<br>Akron, OH 44310 | : <br> : <br> : <br> : <br> : <br> : | COMPLAINT FOR DECLARATORY,<br>AND INJUNCTIVE RELIEF, AND<br>FOR COMPENSATORY AND |
| In her official and individual<br>capacities; and | : <br> : | PUNITIVE DAMAGES **(Verified)** |
| | : | |
| **WILLIAM "BILL" MACCHIONE,** Case<br>Worker,<br>SUMMIT COUNTY DEPT. OF<br>JOB & FAMILY SERVICES<br>1040 Tallmadge Ave.<br>Akron, OH 44310 | : <br> : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMAND** |
| In his official and individual<br>capacities; and | : <br> : | |

1

:

**BERNARD ROCHFORD**, Executive :
Vice-President, :
ORIANA HOUSE, INC. :
885 E. Buchtel Ave. :
Akron, OH 44305 :

:

In his official and individual :
capacities; and :

:

**DUANE CRABBS**, Co-Founder :
South Street Ministries d/b/a :
THE FRONT PORCH :
798 Grant St. :
Akron, OH 44311 :

:

In his individual capacity :

:

Defendants. :

## Introduction

1.          This is a civil rights action demanding declaratory and injunctive relief

and money damages from four individuals, three of whom are governmental

employees, and/or, were acting under color of state law, who, by joining with a

private person, maliciously conceived of a single plan of action to deprive the

plaintiff of his rights to expressive association and equal protection of the laws, by

abusing their state powers and influence to ban the plaintiff from a public facility

2

under threat of arrest and prosecution, and conspiring among themselves to prohibit plaintiff from having any participation in ex-offender reentry services, accomplished with false charges, no written or due notice of the facts and evidence against him and denying plaintiff of fundamental due process, in violation of *the First Amendment* and *the Fourteenth Amendment*, to the United States Constitution. Plaintiff seeks to compel the defendants to comply with the laws and Constitution of the United States under the facts of this case. Plaintiff also seeks monetary damages for the ongoing torment, persecution, and damages incurred to plaintiff as a direct and proximate result of the defendants' ongoing unlawful conduct.

## Plaintiff

2.        The Plaintiff, Phillip Tate, is a civilian and ex-offender who has been actively engaged with advocacy for ex-offenders and their stakeholders throughout Summit County and the state of Ohio, as well as the STAR (Successful Transitions Accelerated Reentry) Program with the U.S. Pretrial Services and Probation Office/Northern District of Ohio. Plaintiff's professional career path, volunteerism, and societal reintegration trajectory necessarily requires his participation in Summit County Reentry Network ("SCRN"), the Federal Bonding Program, select events hosted at Ohio Means Jobs Center ("OMJ"), as well as

3

mentoring at the weekly SCRN Peer Support Group meetings hosted at The Front Porch.

## Defendants

3.        Defendant, **Ayana Comrie**, a/k/a **"Ms. Red Pen,"** is the appointed Reentry Coordinator of Summit County Reentry Network ("SCRN") and a contract employee of Oriana House, Inc. ("OHI") who is directly responsible for the management, administration and leadership of SCRN staff, subcommittee volunteers, and related operations. Defendant has traditionally been incubated within the Ohio County Building at S. Main St., Akron, OH until being relocated to the Ohio Means Jobs Center ("OMJ") and, is listed as a "service" on "THE COUNTY OF SUMMIT" governmental website https://co.summitoh.net (Services @ #24). Defendant Comrie has always possessed a governmental identification badge and business cards issued by the County Executive's office and bearing the Summit County-state of Ohio seal, a governmental email address (acomrie@summitoh.net) and enjoyed county employee parking privileges, among other activities generally provided to county governmental employees. Defendant is being sued in her official capacity with regard to injunctive relief and in her individual capacity for money damages.

4

4.　　　　　Defendant, **William "Bill" Macchione**, is a government employee and case worker of Summit County Department of Job & Family Services ("SCDJFS") in Akron, OH. In this capacity, and among Defendant's other duties, Defendant Macchione is required to engage in community service volunteerism while on the clock and maintain strict compliance with all laws. One of his duties included participation in SCRN's Executive Subcommittee, which is commonly known to be SCRN's leadership steering committee. Defendant Macchione is being sued in his official capacity with regard to injunctive relief and in his individual capacity for money damages.

5.　　　　　Defendant, **Bernard Rochford**, is the Executive Vice-President of Business Operations for Oriana House, Inc. ("OHI"), a Summit County community-based correctional ("CBCF") conglomerate which enjoys a slew of State, County and Federal governmental contracts for its services as a certified jailor by Ohio Department of Rehabilitation & Corrections ("ODRC") and assorted service provider to the recovering and reentering populations. Defendant Rochford serves as the *de facto* supervisor of SCRN and has actively influenced, supervised and managed its affairs behind-the-scenes through his participation in SCRN's Executive subcommittee. Among Defendant's other duties is his responsibility for strictly adhering to the laws and making policy for the SCRN coordinator,

5

enforcing and ensuring that his subordinates, agents, and employees implement and comply with such laws and policies by taking prompt action in response to incidents of inappropriate behavior, unlawful conduct, and/or discrimination in the suppression of any SCRN participants' *First* and *Fourteenth Amendment* rights to expressive association and due process when their banishment is sought by the SCRN coordinator, its staff and/or executive subcommittee.

6. Defendant, **Duane Crabbs**, is a civilian and co-founder of South Street Ministries, as well as the proprietary host of, and partner in, SCRN's weekly Peer Support Group meetings at The Front Porch, where ex-offenders, their families, and community stakeholders traditionally congregate for resources, information-sharing, employment leads, mentoring and peer support to assist in their successful reintegration into society. Among Defendant Crabbs' duties and obligations is the responsibility to uphold the laws and to refrain from having any active participation in a plan to deprive anyone of their federally guaranteed rights as a sanction without due process of law. Defendant Crabbs is being sued in his individual capacity with regard to money damages and declaratory relief.

7. Upon information and belief, each of the Defendants performed, participated in, aided and/or abetted, acted jointly and severally, or were

6

deliberately indifferent to the acts averred herein, proximately caused the damages averred below, and are liable to Plaintiff for the damages and other relief sought herein.

8.      Upon information and belief, at all relevant times, Defendants Comrie, Macchione and Rochford were acting within the scope of his or her authority as governmental agents, employees and/or contractors on behalf of SCDJFS, State and County government as contracted service providers of Summit County, Ohio government. Defendant Crabbs was, at all relevant times, acting as a private citizen who voluntarily participated in the unlawful acts of the aforementioned Defendants.

9.      Upon information and belief, all of the actions alleged in this Verified Complaint were taken pursuant to customs, policies, and practices of the SCRN, and Defendants Comrie, Macchione and Rochford have been, are presently, and will be acting under the color and authority of the laws of the United States, county of Summit, and the state of Ohio.

7

## Jurisdiction and Venue

10.        The plaintiff brings this action to enjoin violations of the *First* and *Fourteenth Amendments* to the United States Constitution and of the freedom of speech guaranteed by the Ohio Constitution.

11.        This Court has jurisdiction over the plaintiffs' 42 U.S.C. Section 1983 claims under 28 U.S.C. Section(s) 1331 and 1343(a)(3).  It has jurisdiction to grant declaratory and injunctive relief under 28 U.S.C. Sections 2201-2202 and F.R.C.P. 65. And it has jurisdiction under 28 U.S.C. Section 1367(a) over the plaintiffs' state constitutional claim because that claim forms the same case or controversy as those claims based on federal law.

12.        Venue is proper in this Court and District under 28 U.S.C. Section 1391(b) because the defendants are subject to personal jurisdiction here and because the events and omissions giving rise to this action occurred in this District.

## Facts Common to All Claims

13.        On or about December 15, 1984, plaintiff was implicated by a third-party social acquaintance in a then-alleged rape complaint made by a female who

8

was associated with the third-party-acquaintance, of which plaintiff pleaded "not guilty" to.

14.     Prior to and during the time frame referenced in paragraph 13, above, the third-party acquaintance and plaintiff were embroiled in a "street beef" manifesting in shootings and other interrelated events in the weeks leading up to plaintiffs' arrest.

15.     Akron Police Department ("APD") detectives documented that the victim was shown a series of photo arrays by them, on two different occasions, with each set of arrays containing 2 photos of the plaintiff. The victim could not identify plaintiff in either showing and the detectives relented that only the plaintiffs' race matched the description given.

16.     Relevant to paragraph 15, above, APD detectives also notated that there was no medical physical evidence that a sexual assault had taken place, save for "an abrasion at five o'clock on the perineum," or, on a tab of skin *between* the vagina and anus, which the state's forensic expert testified could result from anything from sitting on a hard chair to wearing blue jeans, found several days *after* the alleged assault was to have occurred, along with the date, time and place of this one incident changing three times, topped off with the

9

victim testifying under oath that she had wanted to "drop the charge" against plaintiff but was encouraged by the third-party acquaintance to proceed with them.

17.     Relevant to paragraph 16, above, there was no physical identification of the plaintiff from the date of his arrest until February 11, 1985, when the victim was positioned outside the very courtroom door that plaintiff was scheduled to enter for the start of trial at a specified time, alongside the prosecuting attorney and lead investigating detective who, once plaintiff had entered the courtroom door accompanied by sheriff deputies, notified the trial court that an "identification" of the plaintiff had been made.

18.     Relevant to paragraph 17, above, the jury sent a note to the trial judge notifying that it was helplessly "deadlocked seven to five in favor of acquittal" following a lengthy deliberation, with the trial judge entering the jury room without plaintiff or his counsel being present and conducted an *ex parte* communication which inevitably helped the jury reach a unanimous "guilty" verdict soon thereafter.

19.     Relevant to paragraph 18, above, a sentence of 15-to-25 years was imposed upon plaintiff due, in some part, to plaintiff's rejection of plea offerings,

all of which serves as the true and factual premise of plaintiffs' conviction for rape alluded to, relied upon, and exploited by, Defendants.

20.     Plaintiff maxed out his twenty-five year sentence within ODRC at 15 different prisons and 20 transfers to institutions ranging from minimum to maximum security after declining early parole release consideration.

21.     Relevant to paragraph 20, above, the plaintiff was known for his advocacy for prisoners, their families and spearheading reforms which improved conditions of confinement, along with mentoring hundreds of men, women and youth over the years, among which was the successful petitioning of the court for injunctive relief based upon a motion written in blood, on twelve individual sheets of toilet paper, and encased in plastic, when antagonistic prison officials denied plaintiff access to stationary.  As a result, plaintiff was authorized to design community outreach programming and benefited from being mentored in the science of ex-offender reentry by prison administrators and employees, becoming the elected chairman of the post-Lucasville riot Inmate Liaison Committee by his peers, and, on an occasion, being transferred by U.S. Marshals from prison to the courtroom of the Honorable Judge Sam H. Bell, who summoned plaintiff in mid-afternoon, to converse at length about the First Amendment, generally.

11

22.        In January 2011, plaintiff was invited by a Sociology Department professor at The University of Akron and practicing attorney, to participate on SCRN's Strategic Planning, Employment and Training & Education subcommittees.

23.        Relevant to paragraph 22, above, over time the plaintiff garnered the friendship and respect of his peers and colleagues in SCRN who, in 2012, coordinated among themselves to dress in yellow and attend the funeral of plaintiffs' fiance in plaintiffs' stead, due to plaintiff having undergone a life-saving surgery one day prior to the funeral which precluded his attendance. In addition, colleagues likewise prepared and delivered home-cooked meals to plaintiff during his convalescence and, over time, plaintiff reciprocated on behalf of some of them when they became ill-stricken.

24.        In 2011, plaintiff founded the nonprofit training agency Oh! Pen Mine Inc. ("OPM") and served as its chief strategic consultant and outreach designer. OPM was endorsed by SCRN and ODRC for its innovative workforce development model. (Pls. Ex. "A").

25.        Plaintiff has been actively involved in community reentry and ex-offender advocacy, mentoring and facilitating the hiring of one- hundred ex-

12

offenders, consisting of men and women from all walks of life, from March 2016 to July 2016, alone. (Pls. Ex. "B").

26.　　　Plaintiff has served on various Boards of Directors along with chief executive officers of Summa Health, Infocision, Essential Stories, Akron Metropolitan Housing Agency, and Chuck Sandstrom Enterprises, among others, on behalf of victims of crime.  (Pls. Ex. "C").

27.　　　Plaintiff designed and rendered the SCRN concept, format, and facilitation of the peer support group hosted at The Front Porch and galvanized the active, weekly participation of a host of successful reentry service providers inspired to collaborate with plaintiff.  (Pls. Ex. "D").

28.　　　Plaintiff assisted in the creation and facilitation of the monthly SCRN Reentry Resource Seminars and laid out the groundwork for what is now its ReLink hotline. (Pls. Ex. "E" 1&2).

29.　　　The successor SCRN Reentry Coordinator to Terry Tribe Johnson, Patrick White, also sought program development ideas from plaintiff to advance SCRN's progression. (Pls. Ex. F").

30.        Plaintiff has been consistently outspoken about SCRN's resistance to its need to generate performance outcomes related to ex-offender service contacts, and was staunchly opposed to a series of on-going, progress-impeding, conflicts of interest detrimental to current and future reentering offenders and their stakeholders, posed by OHI through Defendant Rochford and his wielding of unchecked powers and influence in the form of: **a)** serving as SCRN's fiscal sponsor while unilaterally picking its coordinators and signing them to exclusive employment contracts, whose chain-of-supervisory command necessarily requires all SCRN participants to answer to Defendant Rochford; **b)** resisting plaintiffs' call to have SCRN incorporate as a free-standing 501(c)(3) nonprofit agency after more than five years of being fiscally sponsored by OHI and paying out fees to OHI on all monies SCRN has received over the years that could have been better applied towards the creation of an ombudsman support resource to address ex-offender complaints about unfair practices and other administrative concerns occurring within OHI facilities and throughout other halfway houses, which negatively impacts their daily lives and stymies efforts to recover a productive life, that is on par with the advent and support of the SCRN-endorsed Expungement Clinic that not every ex-offenders can benefit from; and **c)** plaintiffs' insistence that SCRN set standards for participating service providers to

14

adhere to, and be audited on, for purposes of exacting a professional and competent compliance by providers who are known to be masquerading as legitimate providers to unsuspecting reentering offenders who are "referred" to those agencies by SCRN, while being permitted to operate as slum lords, virtual crack, alcohol and prostitution dens, among other things, which detrimentally impacts those well-meaning offenders who have their momentum for a successful reintegration derailed, all too commonly resulting in an inevitable return to prison, and thereby adding to the rising costs and collateral consequences being imputed to offenders, their families, new victims, the criminal justice system, and society at-large, with OHI and Defendant Rochford standing to benefit rewardingly by this uninterrupted perpetuation of this vicious cycle.

31.        Plaintiff met and became acquainted with Defendant Comrie after she was hired by OHI as SCRN Reentry Liaison to Terry Tribe Johnson, at which time Defendant professed to be aligning herself with plaintiff after hearing him express his opinion and viewpoints, and requesting that plaintiff "mentor" her on ex-offender reentry issues because she was not being "taught anything" by OHI, Defendant Rochford or Terry Tribe Johnson.

32.     Relevant to paragraph 31, above, Defendant Comrie began showing plaintiff documents and sharing information bearing upon SCRN grant filings to community funders and their being duped into allocating funding for "fudged numbers" attributed to the monthly Reentry Resource Seminars and a scheme to change the wording on who, besides ex-offenders, the Reentry Resource Seminars were open to, for purposes of concealing this fraud.

33.     In 2014, Defendant Comrie asked for plaintiff's help with providing meals for her first Angel Tree Christmas Project to ensure that her inaugural venture was a success. Plaintiff arranged for a restaurant to prepare, deliver and set-up the food for the event. (Pls. Ex. "G").

34.     In 2014, Defendant Comrie confided to plaintiff that she was besieged by a terrifying health crisis involving uterine cysts and her fear that the cysts would prove to be cancerous.

35.     Relevant to paragraph 34, above, plaintiff diligently researched the medical conditions based upon all of the specific information Defendant Comrie provided, such as her having experienced a previous episode of the same health issues, and encouraged Defendant through to, what turned out to be, a positive outcome.

16

36.     Beginning in late-2014, Defendant Comrie complained to plaintiff about her body scarring concerns resultant from a childhood disorder, along with a body image complex concerning her lower body which resulted in Defendant consuming massive amounts of protein shakes and a protein-rich diet, almost daily body sculpting exercising at a Fairlawn fitness club, and constantly soliciting plaintiff's opinion, for the shared purpose of attracting the attention of her former boyfriend.

37.     In or around February 2015, Defendant Comrie confided to plaintiff that she had gone to the home of a prominent Akron, Ohio youth service - provider more than once, how they had exchanged kisses and body massaging, and his offering to prepare special meals for her, all under the pretense of Defendant Comrie "writing a grant" for the service provider.

38.     Relevant to paragraph 37, above, Defendant Comrie sought plaintiff's help in discouraging the resulting unwanted attention which she described as having manifested as pet name-calling, suggestive innuendo and reminders of their times together, occurring during her work hours.  Defendant Comrie stated to plaintiff that she was being stalked and harassed, but wanted to choose a more diplomatic approach to thwarting the attention.

17

39. Relevant to paragraph 38, above, plaintiff and Defendant would meet off-site at public libraries, stay after reentry functions and utilize the telephone and text messaging towards the aim of adjusting Defendant Comrie's conduct and outlook. (Pls. Ex. "H").

40. In or around May 2015, Defendant Comrie telephoned plaintiff crying hysterically over being broken down on the side of the highway far out on State Rt. 8 and that the entire exhaust system of her SUV had become detached. In response, plaintiff dispatched someone to locate and repair Defendants' vehicle, and see to it that she had a safe journey home.

41. Relevant to paragraph 40, above, Defendant Comrie telephoned plaintiff in distress over her brakes failing in mid-afternoon in the University of Akron area. Plaintiff dispatched someone to locate Defendant Comrie, accompany her to purchase brakes, and have the brakes put on.

42. Relevant to paragraph 41, above, Defendant Comrie would call upon plaintiff to get her to and from airports, have her home fireplace repaired, and other similar matters. In each circumstance, as before, the plaintiff would dispatch someone else to assist Defendant Comrie.

18

43.         Relevant to paragraph 42, above, from the date of first meeting

Defendant Comrie, through and including current date, plaintiff has never sought

money, favor, or any manner of reciprocation of Defendant Comrie for any

accommodation plaintiff has been called upon to facilitate on behalf of

Defendant, as he is known to do among other family, friends and colleagues who

happen to call upon him in general.

44.         Relevant to paragraph 43, above, Defendant Comrie knew that

plaintiff had a girlfriend who Defendant opined to be " very pretty," when seeing

a photo of she and plaintiff.  Defendant had spoken with plaintiffs' girlfriend on

the telephone when Defendant would call plaintiff at night and on occasional

weekends, and it was well understood between Defendant and plaintiff that the

plaintiff had no romantic interest in Defendant whatsoever, nor has plaintiff at

any time insinuated, alluded to, or in any way imputed any action, gesture or

comment that could be misconstrued as hinting at an interest in Defendant

Comrie.

45.         In or around July 2015, Defendant Comrie sought plaintiff's help in

incorporating a for-profit company. Plaintiff assisted Defendant in coming up with

the company name, *AREDCOM, Inc.,* in which Defendant asked plaintiff to serve as its Statutory Agent of. (Pls. Ex. "I").

46.        Throughout Defendant Comrie's tenure at SCRN, she would vent to plaintiff about intra-office tensions, harassments and perceived racial asides by Terry Tribe Johnson and, subsequently, by the incoming Patrick White, and shared that Defendant Rochford had re-written Defendants' job description to incorporate the duties of the SCRN Reentry Coordinator minus any wage increase, resulting in plaintiff discouraging Defendant from her expressed desire to fist-fight and short-change SCRN operations by withholding her ideas and work productivity. (Pls. Ex. "J").

47.        Defendant complained to plaintiff that she had been passed over for promotion to the full-time Reentry Coordinator position following the resignation of Terry Tribe Johnson. Defendant asked to join plaintiff's JUST ONE Initiative ("JOI") ("Jesus Uniting Souls Towards Opportunity Networking Empowerment"), an innovative community service demonstration project created by plaintiff to address a national youth predicament servicing the Children of Incarcerated Parents. (Pls. Ex. "K" thru K-13).

48.     Relevant to paragraph 47, above, the director of the Ohio prison system, Gary Mohr, has characterized the JUST ONE Initiative as being an "exciting" and "great initiative." (Pls. Ex. "L").

49.     Relevant to paragraph 48, above, plaintiff installed Defendant Comrie as chief executive officer of JOI following an incident in which Defendant shared that Defendant Rochford insulted her by asking if she wanted to "punch" him in his face over Defendant Rochford having reduced the search for a new SCRN Reentry Coordinator to a white female attorney, Patrick White, and herself, with Defendant Rochford choosing White, a former OHI employee, to become the replacement Reentry Coordinator for Terry Tribe Johnson., whom Defendant Comrie perceived as unqualified.

50.     Relevant to paragraph 49, above, Defendant Comrie began emailing and providing a copy of a SCRN grant filing to the GAR Foundation in which Defendant pointed out discrepancies she was uncomfortable with including, and sharing conversations alleged to have occurred between her and Defendant Rochford, describing how Defendant Rochford would harp upon duplicitous strategies for Defendant Comrie to aggressively pursue in order to acquire buy-in

21

and participation from among the black church community to enhance SCRN's community inclusiveness appeal for increased funding.  (Pls. Ex. "M").

51.      Relevant to paragraph 50, above, Defendant Comrie complained to plaintiff that Defendants Rochford and Macchione were "stalking" her social media Instagram and Facebook profiles and were "sexually harassing" her by allegedly "hacking" her accounts and circulating a bikini-clad photo of Defendant Comrie among their male colleagues, which had been purportedly taken while she was on a beach during a then-recent vacation. Defendant Comrie complained that Defendants Rochford and Macchione had summoned her to OHI's headquarters in an attempt to "discipline" her over making sexual harassment and stalking accusations against them.  Defendant Comrie urged plaintiff to accelerate the formulation of the JOI venture so that she could formally resign employment with SCRN.

52.      In the fall of 2015, and while on the clock at OMJ and employed by SCDJFS, Defendant Macchione was invited to attend a SCRN Employment subcommittee meeting, which plaintiff had served on for more than five years. Defendant Macchione introduced himself as working for SCDJFS, identified where

on the OMJ premises his office was located, and how he served as the chairman of the SCRN Executive Committee along with Defendant Rochford.

53.     Relevant to paragraph 52, above, Defendant Macchione delved into an openly belligerent monologue in which he denounced the credibility of evidence-based research on ex-offender employment and debunking the legislative purpose of reentry coalitions, such as SCRN, under the Ohio General Assembly's House Bill 130, offering that his one size fits all "cure" was to simply provide every reentering offender with a job.

54.     Relevant to paragraph 53, above, plaintiff diplomatically refuted Defendant Macchione's dogma with other subcommittee members agreeing with plaintiff.  Defendant Macchione then became gratuitously hostile in response to his ideological rant being challenged, resulting in several members abruptly leaving the meeting, which had never been done before.

55.     Relevant to paragraph 54, above, Defendant Comrie summoned plaintiff to her cubicle inside OMJ and shared that Defendant Macchione had ordered her to his office and inquired of Defendant as to "who" plaintiff was, that he had "Googled" plaintiff and referred to him by derogatory names, culminating

23

in Defendant Comrie quoting Defendant Macchione as threatening to do everything within his powers to "ban" plaintiff from all participation in SCRN.

56. Relevant to paragraph 55, above, plaintiff urged Defendant Comrie to never feel as if she was obligated to defend plaintiff against anyone who did not frontally address plaintiff face to face, particularly Defendant Macchione, and the plaintiff had to console a crying and visibly upset Defendant Comrie.

57. On or about November, 2015, Defendant Comrie notified plaintiff that OHI and Defendant Rochford had decided to appoint her to the SCRN Reentry Coordinator position on an "interim" four month trial basis, with a "$3.00 raise" that Defendant Comrie felt insulting.

58. Relevant to paragraph 57, above, in the few days following Defendants' promotion, Defendant Comrie did a complete about-face in her shared sentiments about Defendants' Macchione and Rochford mistreating her and the list of wrongdoing Defendant had cataloged over several months to plaintiff about them.

59. Relevant to paragraph 58, above, Defendant Comrie made herself noticeably unavailable and had attempted to hamstring an important meeting that was scheduled by the director of ODRC to take place on November 11, 2015

24

pertinent to the JO venture. On the eve of that meeting, which had been selected as to day and time by Defendant Comrie specifically, Defendant announced that she would be unavailable to attend.

60. Relevant to paragraph 59, above, plaintiff called Defendant Comrie out on her behavior, lack of conscience, and betrayal, resulting in Defendant being dismissed from the JOI venture and both plaintiff and Defendant Comrie ceasing all personal communication for several months, save for plaintiff's continued attendance at SCRN meetings and appearances at peer support meetings.

61. In or around February 2016, Defendant Comrie and plaintiff mutually attended an ODRC Reentry Partnership Quarterly meeting at the Faith Temple in Canton, OH. Upon its conclusion, Defendant and plaintiff conversed, for the first time on months, on the topic of diffusing their disagreement for the sake of professionalism.

62. Relevant to paragraph 61, above, Defendant Comrie seized the opportunity to express how Defendant Rochford had nixed her selection of a male Administrative Assistant for the SCRN office and, instead, notified her that he was appointing another "white female Oriana employee to spy on me, teach her my

job and then replace me with her," culminating with Defendant Comrie vowing to "not really teach her anything." The incoming assistant turned out to be one Bobbi Snider.

63. During the month of April 2016, plaintiff was accompanied to the weekly peer support meeting by his then-employer, Dr. Ollie Jones of Heart To Heart Ministries, Inc., with whom plaintiff worked as a Job Developer Coordinator, and which required plaintiffs' regular attendance at The Front Porch and SCRN meetings at OMJ to assist clients at job fairs hosted there, to schedule and attend Federal Bonding application processing, and to assist them with navigating OMJ-exclusive resources and staffers whom plaintiff had a working relationship with.

64. Relevant to paragraph 63, above, near the conclusion of the peer support meeting, and while standing next to plaintiffs' employer, Defendant Comrie arose from her seat and initiated a prolonged embrace of the plaintiff for several minutes.

65. Relevant to paragraph 64, above, Defendant Comrie reminded plaintiff that she had given him a present for his June 2015 birthday and urged plaintiff to send her "flowers" to her worksite at OMJ and that "one of the secretaries will call me when they arrive and I'll come out to get them."

26

66.    Relevant to paragraph 65, above, plaintiff found the request odd and did not honor Defendants' suggestion.

67.    From April to in or around May 2016, plaintiff and other SCRN subcommittee members exchanged their observance of Defendant Comrie's transformation into an arrogant, dismissive and self-absorbed bully as Reentry Coordinator, who had previously philosophized how "pretty" she believed herself to be, her self-promotion of her "right" academic credentials, how she was a member of the "right" church, that she was affiliated with the "right" sorority, and had the "right" back-story in coming to Akron from New York and ascending to the top of Summit county reentry over local contenders ,and her shared belief that she had the "right" social media skills which, to Defendant Comrie's thinking, was a tried and true recipe for inevitable "success." On several occasions Defendant Comrie would speak down to subcommittee members, hold up photo sessions at events until Defendant "fix[ed]" her make-up, and insisting on being in every photo taken at some reentry events that plaintiff was in attendance at.

68.    Relevant to paragraph 67, above, Defendant Comrie began imposing the very Parliamentary Procedure she had months before attributed to former Reentry Coordinator, Patrick White, and Defendant Rochford, as implementing

27

following meetings she was in attendance at where a plan was hatched to effectively thwart plaintiff from voicing his viewpoints and exposing Mr. White as having no working knowledge of reentry, which had the effect of muting the plaintiff in particular.

69.       On or about July 23, 2016, plaintiff attended a SCRN Joint Committee meeting chaired by Defendant Comrie and attended by Defendants Rochford and Macchione.

70.       Relevant to paragraph 69, above, Defendant Comrie announced that OHI employees Donovan Harris and Bobbi Snider had been appointed to the Advocacy and Training & Education Subcommittees       , with Defendant Macchione remaining chairman of the Executive Committee and the reorganizational coupe complimented with Defendant Comrie remaining Reentry Coordinator, with all answering to Defendant Rochford. (Pls. Ex. "N").

71.       Relevant to paragraph 70, above, this maneuver effectively abolished the five-plus year SCRN practice and custom of all subcommittee members nominating and voting for their own chairpersons after a written announcement, and was supplanted with a brazen OHI-led takeover of SCRN and staffed with

28

Defendants Rochford, Comrie and subordinate employees Donovan Harris and Bobbi Snider rounding out SCRN's newfangled chain of command.

72. Relevant to paragraph 71, above, plaintiff had served freely and productively in SCRN and its subcommittees over five years with the respect, support and endorsements of his colleagues prior to the collusive machinations implemented by Defendants Rochford, Comrie, and Macchione. (Pls. Ex. "O").

## Conspiracy

73. On or about July 29, 2016, plaintiff was alerted by his employer, Dr. Ollie Jones, that she had been notified initially by Defendant Bernard Rochford and Defendant Duane Crabbs of their wish to have a meeting with her concerning allegations made by Defendant Comrie of plaintiff stalking, sexually harassing, and sending inappropriate text messages to Defendant Comrie and making inappropriate comments to Bobbi Snider, Defendant Comrie's Administrative Assistant.

74. Relevant to paragraph 73, above, plaintiff denied the allegations and offered to Dr. Jones that the accusations were a farce intended to mute and remove plaintiff from SCRN.

75.        Relevant to paragraph 74, above, plaintiff was copied on an email reply authored by Dr. Jones to Defendant WIlliam Macchione in which Dr. Jones recited the conversation and accusations made by Defendant Comrie and Bobbi Snider represented in a meeting held between Dr. Jones, Defendant Macchione and Defendant Crabb on August 05, 2016 in Dr. Jones' office, including a reiteration of Dr. Jones having requested copies of the alleged "text messages" sent to the complainants, which were denied to her. (Pls. Ex. "P").

76.        Relevant to paragraph 75, above, without any hearing, written notice detailing dates, times and evidence, and in the absence of any opportunity for plaintiff to confront his accusers and offer evidence and witnesses, Defendant Crabb mandated that plaintiff could no longer attend The Front porch weekly peer support meetings, and Defendant Macchione boasted that he had personally spoken "to the sheriff" and arranged for plaintiff to be banned from the Ohio Means Jobs Center property and all SCRN meetings, under threat of arrest and prosecution, in furtherance of the conspiracy against plaintiff.

77.        Relevant to paragraph 76, above, plaintiff immediately resigned his employment position with Dr. Jones due to his inability to execute his job functions which consisted of mentoring and recruitment at The Front porch,

schedule and attend Federal Bonding registrations of future clients, attending Job Fairs, meeting new Employers and accessing resources of potential benefit to plaintiff as an ex-offender, identifying those people and resources that could help propel plaintiffs' career in the reentry field, and continuing his friendships and networking relationships with plaintiffs' peers on the SCRN subcommittees who authored letters in plaintiffs' support, all of which were exclusively hosted at the public OMJ site.

78.        Relevant to paragraph 77, above, Defendant Comrie, SCRN, and Defendant Rochford have actively sought, applied for, and benefited from public, private and governmental grant funding while, simultaneously, using the power and influence of their associational judicial and governmental prestige derived from contractual services provided by and through the OHI-SCRN tandem to Summit County, Ohio, to bludgeon the plaintiff for nothing more than the peaceful assertion of his right of expressive association by impermissibly conspiring to discriminate against plaintiff upon the grounds of his viewpoints and past criminal conviction, although publicly pledging to "serve regardless of criminal conviction," as signature endorsed by Defendant Comrie in a printed public handout and as represented in grant filings to funding sources. (Pls. Ex. "Q").

31

79.      Relevant to paragraph 78, above, the Defendants conspired to falsely

accuse, smear, and unilaterally try, convict and sanction plaintiff as retribution for

plaintiff constitutionally opposing Defendants Comrie, Macchione, Rochford, and

Crabbs from using their powers, prestige and influence to suppress the unpopular

ideas expressed by the plaintiff and other good-faith SCRN participants, in

violation of plaintiffs' clearly established *First* and *Fourteenth Amendment* rights.

## CLAIMS FOR RELIEF

1.       **Freedom of Speech under the United States Constitution**

**(42 U.S.C. Section 1983)**

79.      Plaintiff realleges and repleads all of the allegations in paragraphs 1

through 78 of this Complaint and incorporates them by reference.

80.      The Defendants actual and threatened actions to falsely accuse

plaintiff of inappropriate conduct and barring plaintiff from accessing SCRN, Ohio

Means Jobs Center, and The Front Porch, under threat of arrest and prosecution,

violates the freedom of speech and expressive association rights of plaintiff

guaranteed by the *First* and *Fourteenth Amendments* of the United States Constitution.

81.     Under 42 U.S.C. Section 1983, the plaintiff is entitled to injunctive relief prohibiting the Defendants from violating his rights, privileges, and immunities.

2.     **Freedom of Speech under the United States Constitution**
**(Declaratory Judgement)**

82.     Plaintiff realleges and repleads all of the allegations in paragraphs 1 through 81 of this Complaint and incorporates them by reference.

83.     Separately and in addition, because the actions of Defendants violates the freedom of speech guaranteed by the *First* Amendment and the *Fourteenth Amendment* of the United States Constitution, the plaintiff is also entitled under 28 U.S.C. Section(s) 2201-2202 to a declaratory judgement declaring that the conduct of Defendants was an impermissible and conspiratorial abridgement of plaintiffs' well-settled federally protected rights.

3.      **Equal Protection Clause of the *Fourteenth Amendment* to the United States Constitution**

**(42 U.S.C. Section 1983)**

84.        Plaintiff realleges and repleads all of the allegations in paragraphs 1 through 83 of this Complaint and incorporates them by reference.

85.        Defendants prevented plaintiff from participating in SCRN, OMJ Center, and The Front porch, a program or activity of SCRN, on the basis of plaintiffs' peaceful expression of his thoughts, knowledge, viewpoint, and experience on the topic of ex-offender reintegration, from July 2016 through and including current date.

86.        Defendants' conduct and threatened actions to arrest and prosecute plaintiff violates the freedom of speech guaranteed by the Equal Protection Clause of the *Fourteenth Amendment* of the United States Constitution.

87.        Plaintiffs' right to equal protection of the laws under the *Fourteenth Amendment* to the United States Constitution was violated by this denial of equal access to public and publicly funded and supported programs, services, and facilities.

88.     Plaintiff has a cause of action for violation of his constitutional rights

to equal protection, under the **Civil Rights Act**, 42 U.S.C. Section 1983.

89.     Under 42 U.S.C. Section 1983, the plaintiff is entitled to injunctive

relief prohibiting the Defendants from violating his rights, privileges, and

immunities under Federal law.

**4.      Equal Protection Clause of the *Fourteenth Amendment* to**

**the United States Constitution**

**(Declaratory Judgement)**

90.     Plaintiff realleges and repleads all of the allegations in paragraphs 1

through 89 of this Complaint and incorporates them by reference.

91.     Separately and in addition, because the conduct by Defendants

violates the freedom of speech guaranteed by the Equal Protections Clause of the

*Fourteenth Amendment* of the United States Constitution, the plaintiff is entitled

under 28  U.S.C. Section(s) 2201-2202 to a declaratory judgement declaring that

the Defendants' actions are unconstitutional.

5. **Vagueness**

**(42 U.S.C. Section 1983)**

92.      Plaintiff realleges and repleads all of the allegations in paragraphs 1 through 91 of this Complaint and incorporates them by reference.

93.      The Defendants' conduct is void for vagueness and denied plaintiff of procedural due process and liberty interests guaranteed under the *First Amendment* and *Fourteenth Amendment* of the United States Constitution.

94.      Under 42 U.S.C. Section 1983, the plaintiff is entitled to injunctive relief prohibiting Defendants from violating his rights, privileges, and immunities under Federal law.

6. **Vagueness**

**(Declaratory Judgement)**

95.      Plaintiff realleges and repleads all of the allegations in paragraphs 1 through 94 of this Complaint and incorporates them by reference.

36

96.        Separately and in addition, because the conduct of Defendants so violates the *First Amendment* and the *Fourteenth Amendment* of the United States Constitution, the plaintiff is also entitled under 28 U.S.C. Section(s) 2201-2202 to a declaratory judgement declaring that the conduct of Defendants are unconstitutional.

7.                              **Conspiracy**

**(42 U.S.C. Section 1983)**

97.        Plaintiff realleges and repleads all of the allegations in paragraphs 1 through 96 of this Complaint and incorporates them by reference.

98.        Defendants Comrie, Rochford, Macchione, and Crabbs actively joined and participated in a single plan to remove plaintiff from any participation in SCRN by making good on a pledge to ban plaintiff from SCRN consisting of using employees of the SCRN office and OHI employees under the direct control and supervision of Defendant Bernard Rochford, for purposes of concocting and propagating false accusations of stalking, sexual harassment, and inappropriate behavior against plaintiff, while using plaintiffs' criminal conviction as the central

cohesive element for purposes of lending a pseudo-credence to their malicious accusations.

99.          Relevant to paragraph 98, above, Defendants Comrie, Rochford, Macchione, and Crabbs bypassed the well-known process for lodging a criminal complaint with the county prosecutor or law enforcement, presenting supportive facts, eye-witnesses and evidence, all of which Defendant Comrie knew to do when thwarting the allegedly unwanted advancements of at least one male suitor whom she admitted kissing, visiting at his home after hours more than once and attempting to discourage his intrusive and inappropriate telephone calls to her office. (Pls. Ex. "R").

100.          Relevant to paragraph 99, above, Defendant Macchione conspired with Defendants Comrie, Rochford, and Crabbs by unilaterally going to plaintiffs' employer and "the sheriff" whom he wielded some type of power, and/or, influence over as an employee of SCDJFS at OMJ Center, in furtherance of the conspiracy, to ban the plaintiff from its premises and foreclosing on any means of plaintiff participating in SCRN or accessing any of the publicly available resources centralized at OMJ Center.

101.     Relevant to paragraph 100, above, both Defendants Macchione and Crabbs joined forces by initiating a meeting with plaintiffs' employer to represent the false accusations of Defendant Comrie and Bobbi Snider and gave notice that they had decided to prohibit plaintiff from attending the SCRN Peer Support Meeting at the premises which is partially owned, and/or operated, and/or functions under the control and influence of Defendant Crabbs, who was acting in furtherance of the general conspiratorial objective of ostracizing and penalizing plaintiff through their overt acts of banning plaintiff from participation in SCRN and Summit County reentry, without due process of law.

8.                                **Conspiracy**

**(Declaratory Judgement)**

102.     Plaintiff realleges and repleads all of the allegations in paragraphs 1 through 101 of this Complaint and incorporates them by reference.

103.     Separately and in addition, because the conduct of Defendants so violates the *First Amendment* and the *14th Amendments* of the United States Constitution, the plaintiff is entitled under 28 U.S.C. Section(s) 2201-2202 to a declaratory judgement declaring that the conduct of Defendants are unlawfully conspiratorial under the facts and evidence, and thereby unconstitutional.

9.                          **State Law Claim**

### (Intentional Infliction of Emotional Distress)

104.     Plaintiff realleges and repleads all of the allegations in paragraphs 1 through 103 of this Complaint and incorporates them by reference.

105.     Separately and in addition, the conduct of Defendants Comrie, Rochford, Macchione and Crabbs intended to deprive plaintiff of his right to free expression and due process protected under the Ohio Constitution, by scripting false accusations and bypassing any and all legitimate legal channels in order to personally tailor and enforce the punishment they desired to see heaped upon plaintiff at any cost.

40

106.     The conduct of Defendants Comrie, Rochford, Macchione and Crabbs, as described herein, was extreme and outrageous under Ohio law, and a gross and malicious misuse of the powers, prestige and influence of their respective offices and positions, which they combined to willfully and sadistically harm the plaintiff.

107.     The conduct of Defendants Comrie, Rochford, Macchione, and Crabbs was the cause-in-fact of plaintiffs' humiliation and great emotional distress where plaintiff has had to confront Defendants' accusations at meetings and withstand the stigma Defendants intentionally sought to attach to plaintiff, as well as having to daily endure physical constraints upon his liberty which inhibits the assertion of his right of expressive association by participating in, and taking advantage of, public resources housed at OMJ Center, active participation in SCRN and mentoring at The Front Porch, and the loss of income from employment where plaintiff was unlawfully inhibited by Defendants from executing his job duties, resulting in a loss of wages at $18 per hour, forty hours per week, from July 29, 2016 through and including current date.

**Conclusion**

41

The plaintiff respectfully asks that this Court order the following relief and remedies:

1.        Declare that the conduct of the Defendants under the facts and evidence proffered are unconstitutional, void, without effect, and unenforceable.

2.        Grant a temporary restraining order, preliminary injunction, and permanent injunction prohibiting the Defendants, as well as their officers, agents, employees, attorneys, and all persons who are in active concert or participation with them, from continuing to ban plaintiffs' access to public resources and services housed at Ohio Means Jobs Center, from participation in SCRN with the same tenure and seniority as plaintiff has maintained since January 2011, and that plaintiff be permitted to attend and participate in peer support meetings at The Front Porch, with a copy of this Courts' order required to be posted in full and open view for ease of general public perusal at Ohio Means Jobs Center, SCRN, and The Front Porch, to ensure that the public has accurate notice of the requirements of the law according to this Courts' ruling, and to prevent chilling plaintiffs' speech through backdoor means.

3.        Issue an injunction ordering Defendants to stop engaging in such unconstitutional and unlawful acts, and to develop policies and procedures for

42

preventing recurrence of any such unconstitutional and unlawful acts giving rise to this action.

4.         Require Defendants to develop and maintain a grievance procedure which shall include maintaining complete and accurate written records concerning each complaint of harassment, discrimination or deprivations of *First Amendment* rights, privileged and immunities.

5.         For compensatory damages to be awarded to plaintiff according to proof at trial.

6.         For exemplary and punitive damages to be awarded to plaintiff according to proof at trial.

7.         For interest.

8.         For costs of suit and attorneys' fees.

9.         Waive the requirement for the posting of a bond as security for entry of preliminary relief.

10.        For such other relief as the Court may deem just, proper, and appropriate.

## Demand for Jury

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and the applicable Local Rules, plaintiff demands trial by jury for all issues pleaded herein so triable.

Dated:   December 17, 2016

Respectfully submitted,

PHILLIP TATE
In Pro Se
Mailing Address:
1192 Crestview Ave.
Akron, OH  44320
Phone: (330) 645.5517
Email:  ocosmic01@yahoo.com

44