UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PHILLIP TATE, | ) | CASE NO. 5:16CV3090 |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| vs. | ) | |
| | ) | **ORDER AND DECISION** |
| AYANA COMRIE, *et al*., | ) | (Resolving Docs. 6, 12, 17, 19-23) |
| Defendants. | ) | |

Pending before this Court are eight motions: 1) Motion to dismiss for failure to state claim filed by Defendants Ayana Comrie and Bernard Rochford (Doc. 6); 2) Defendant William Macchione's motion to dismiss for failure to state a claim (Doc. 12); 3) Motion to dismiss for failure to state a claim filed by Defendant Duane Crabbs (Doc. 17); 4) Motion to strike affidavit and documents from Plaintiff's reply and opposition to Defendants' motion to dismiss filed by Defendants Comrie and Rochford (Doc. 19); 5) Motion to strike Plaintiff's affidavit filed by Defendant Crabbs (Doc. 20); 6) Motion to strike Plaintiff's affidavit filed by Defendant Macchione (Doc. 21); 7) Plaintiff's motion for leave to file attached Amended Complaint (Doc. 22); and 8) Motion to dismiss Plaintiff's amended complaint for failure to state a claim filed by Defendants Comrie and Rochford (Doc. 23). After reviewing the Complaint in a light most favorable to the Plaintiff, the Court finds as follows:

1) Motion to dismiss for failure to state claim filed by Defendants Comrie and Rochford is GRANTED. Doc. 6.

2) Defendant William Macchione's motion to dismiss for failure to state a claim is GRANTED. Doc. 12.

1

3) Motion to dismiss for failure to state a claim filed by Defendant Crabbs is GRANTED. Doc. 17.

4) Motion to strike affidavit and documents from Plaintiff's reply and opposition to Defendants' motion to dismiss filed by Defendants Comrie and Rochford is GRANTED. Doc. 19.

5) Motion to strike Plaintiff's affidavit filed by Defendant Crabbs is GRANTED. Doc. 20.

6) Motion to strike Plaintiff's affidavit filed by Defendant Macchione is GRANTED. Doc. 21.

7) Plaintiff's motion for leave to file attached Amended Complaint is GRANTED IN PART and DENIED IN PART. Doc. 22.

8) Motion to dismiss Plaintiff's amended complaint for failure to state a claim filed by Defendants Comrie and Rochford is GRANTED IN PART and DENIED IN PART as MOOT. Doc. 23.

## I. FACTS AND PROCEDURAL HISTORY

Looking to the facts presented in the underlying Complaint and accepting the well-pled factual allegations as true, in the mid-1980s, Plaintiff was convicted of rape. Doc. 1 at ¶¶13-19. While he disputes the conviction, the Plaintiff served 25 years in prison as a result. During his time incarcerated and upon his release, he became recognized for his advocacy work on behalf of other prisoners and for his contributions to non-profit organizations focused on "ex-offender reentry." Doc. 1 at ¶¶21-23.

In 2011, Plaintiff became involved in the Summit County Reentry Network ("SCRN"), when he was invited to participate on SCRN's Strategic Planning, Employment and Training, and Education subcommittees. Doc. 1 at ¶22. SCRN "is comprised of over 70 government, non-profit and faith-based organizations that offer some type of reentry service for consumers." Doc. 1 at Ex. A. Plaintiff attended weekly SCRN peer support group meetings. Doc. 1 at ¶2.

Defendant Duane Crabbs is the co-founder of the South Street Ministries, as well as the host of, and a partner, in SCRN's weekly peer support group meetings at The Front Porch Café (at times "The Front Porch"). Doc. 1 at ¶6. The Front Porch Café is a place where "ex-offenders, their families, and community stakeholders traditionally congregate for resources, information-sharing, employment leads, mentoring and peer support to assist in their successful reintegration into society." Doc. 1 at ¶6.

Defendant William Macchione works for the Summit County Department of Job and Family Services ("Job and Family Services") and serves on SCRN's Executive Subcommittee. Doc. 1 at ¶4. Defendant Bernard Rochford works for Oriana House, Inc., "a Summit County community-based correctional conglomerate which [has various]…governmental contracts for its services as a[n]…assorted service provider to the recovering and reentering populations." Doc. 1 at ¶5. Rochford also serves on SCRN's Executive Subcommittee. Doc. 1 at ¶5.

Through SCRN, Plaintiff also met Defendant Ayana Comrie, who was "a contract employee of Oriana House, Inc." and later served as the SCRN Reentry Coordinator. Doc. 1 at ¶3. She was "directly responsible for the management, administration and leadership of SCRN staff, subcommittee volunteers, and related operations." Doc. 1 at ¶3. Plaintiff and Comrie developed a familiar relationship in which they would meet outside SCRN functions and communicate with one another by phone and text. Doc. 1 at ¶39. Comrie called Plaintiff on several occasions to assist in getting her fireplace repaired, transport her to and from the airport, and respond when her vehicle broke down on the side of the road. Doc. 1 at ¶¶40-42. Comrie also started a for-profit company and asked Plaintiff to serve as its statutory agent. Doc. 1 at ¶45, Ex. I-3.

In late 2015, Comrie was promoted to the position of SCRN Reentry Coordinator. The friendly relationship with the Plaintiff then began to sour. Doc. 1 at ¶¶59-73. Plaintiff disagreed with the functioning of the SCRN board and re-entry programming. He and Comrie had a disagreement, which resulted in their ceasing all personal communications for several months. Doc. 1 at ¶¶59-72. Meanwhile, a non-party, Bobbi Snider, was hired as Comrie's assistant at the Oriana House. Doc. 1 at ¶62. Several months passed and Comrie and the Plaintiff resumed their communication at re-entry meetings.

In the summer of 2016, Comrie and Snider alleged that Plaintiff sent them text messages that constituted sexual harassment, stalking, and "improper behavior." Doc. 1 at Ex. P. Consequently, Plaintiff alleges that "…Macchione conspired with Defendants Comrie, Rochford, and Crabbs by unilaterally going to Plaintiffs' [sic] employer and 'the sheriff' whom he wielded some type of power…to ban the plaintiff from its premises and foreclosing [sic] on any means of plaintiff participating in SCRN or accessing any of the publicly available resources centralized at [Ohio Means Jobs] Center." Doc. 1 at ¶100.

As set forth in an attachment to Plaintiff's Complaint, in August of 2016, Plaintiff was copied on an e-mail written by his supervisor at Heart to Heart Ministries to Macchione and Crabbs, confirming her meeting with them to discuss the allegations by Comrie and Snider. Doc. 1 at Ex. P. The supervisor stated that she "would inform [Plaintiff] to not go to the Front Porch or to the SCRN committee meeting." Doc. 1 at Ex. P. She also confirmed that "…after talking with [Plaintiff] today, he shared that his father passed away suddenly and due to other personal reasons he was resigning effective immediately." Doc. 1 at Ex. P.

Plaintiff *pro se* filed the underlying action against Comrie, Macchione, Crabbs, and Rochford. Plaintiff asserts claims under 42 U.S.C. §1983 for violations of his constitutional

rights under the First and Fourteen Amendments related to an alleged abridgment of his freedom of speech, expressive association, equal protection, conspiracy, and a state-law claim for intentional infliction of emotional distress. He also alleges a claim entitled "Vagueness." In his Complaint, the Plaintiff seeks injunctive and declaratory relief, along with compensatory and punitive damages.

## II. LAW AND ANALYSIS

### Motions to Dismiss

Each of the Defendants have filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). Doc. 6, 12, 17. For the following reasons, the motions are GRANTED.

### A. Legal Standard

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 479 F.2d 478, 480 (6th Cir.1973). But a court "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio,* 193 F.3d 389, 400 (6th Cir.1999)..

> Although this pleading standard does not require "'detailed factual allegations,'...[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' " is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter...to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is

> established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

*Kendell v. Peng*, 2:16-CV-221, 2016 WL 4239927, at *2 (S.D. Ohio Aug. 11, 2016). "[M]atters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.1997)) (emphasis omitted).

### B. Claims for Violations of Rights under 42 U.S.C. §1983

In his Complaint, the Plaintiff alleges violations of his constitutional rights under 42 U.S.C. §1983. Specifically, Plaintiff alleges that the Defendants restrained his First Amendment rights to freedom of speech and expressive association, along with his Fourteenth Amendment right to equal protection under the law, when he was not permitted to attend the SCRN or Front Porch meetings. Further, he alleges generally that the "Defendants' conduct is void for vagueness and denied [sic] plaintiff of procedural due process and liberty interests guaranteed under the First Amendment and Fourteenth Amendment of the United States Constitution." Doc. 1 at ¶93. Plaintiff finally asserts that the Defendants engaged in a conspiracy in violation of his rights to attend the SCRN and Front Porch meetings. Doc. 1 at ¶101.

Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory." 42 U.S.C. § 1983; *Gomez v. Toledo*, 446 U.S. 635, 638 (1980).

> In order to plead a cause of action under § 1983, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person *acting under color of state law*." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (emphasis added) (citations omitted).
>
> The issue of whether a private corporation is "a state actor" or "acted under color of state law" is a question of law for the Court's determination. *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002). In order for a private entity to "act under color of state law" for § 1983 purposes, "its actions [must] so approximate the state action that they may be fairly attributed to the state." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). The Sixth Circuit employs three tests in order to determine whether a private entity meets this requirement: (1) the state compulsion test; (2) the symbiotic relationship or substantial nexus test; and (3) the public function test. *Id.*; *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).

*Kendell v. Peng*, 2:16-CV-221, 2016 WL 4239927, at *2 (S.D. Ohio Aug. 11, 2016) (emphasis added).

### 1) State Action or Acting under the Color of State Law

In applying these three tests to the Plaintiff's allegations, the Court looks to the specific facts set forth in Plaintiff's Complaint. In his Complaint, Plaintiff alleges generally that:

> 8. Upon information and belief, at all relevant times, Defendants Comrie, Macchione and Rochford were acting within the scope of his or her authority as governmental agents, employees and/or contractors on behalf of [Jobs and Family Services], State and County government as contracted service providers of Summit County, Ohio government. Defendant Crabbs was, at all relevant times, acting as a private citizen who voluntarily participated in the unlawful acts of aforementioned Defendants.
>
> 9. Upon information and belief, all of the actions alleged in this Verified Complaint were taken pursuant to customs, policies, and practices of the SCRN, and Defendants Comrie, Macchione and Rochford have been, are presently, and will be acting under the color and authority of the laws of the United States, county of Summit, and the state of Ohio.
>
> 78. …Defendant Comrie, SCRN, and Defendant Rochford have actively sought, applied for, and benefited from public, private and

> governmental grant funding while, simultaneously, using the power and influence of their associational judicial and governmental prestige derived from contractual services provided by and through the [Oriana House]-SCRN tandem to Summit County, Ohio, to bludgeon the plaintiff for nothing more than the peaceful assertion of his right of expressive association by impermissibly conspiring to discriminate against plaintiff upon the grounds of his viewpoints and past criminal conviction, although publicly pledging to "serve regardless of criminal conviction," as signature endorsed by Defendant Comrie in a printed public handout and as represented in grant filings to funding sources. (Pls.Ex. "Q").

Doc. 1. These allegations do not meet any of the three tests set forth by the U.S. Supreme Court to find a private entity has "act[ed] under color of state law." Therefore, Plaintiff fails to state a claim for any violation of his constitutional rights since he has not plead specific facts demonstrating that any Defendant took action under the color of state law.

### a. **State Compulsion Test**

> The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state. *See Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982); *Bier v. Fleming,* 717 F.2d 308, 311 (6th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1283, 79 L.Ed.2d 686 (1984). More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives. *Blum,* 457 U.S. at 1004, 102 S.Ct. at 2785.

*Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).

Here, Plaintiff does not allege facts that demonstrate the state exercised "such coercive power" or provided "such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." Instead, to satisfy the element of state action, Plaintiff alleges that: 1) Macchione is employed by Jobs and Family Services, a government position, as well as serving on the SCRN board; 2) SCRN receives public funds; 3) that SCRN has an office in a building that houses other government offices, and 4) Rochford

works for an organization that contracts with the government to provide services to the public. However, these allegations fail to state a claim as a matter of law.

First, it is undisputed that Macchione works for the Summit County Department of Job and Family Services. However, Plaintiff's allegations do not relate to Macchione's work at Job and Family Services, but rather to his role on the Executive Committee of SCRN. Plaintiff further agrees that SCRN "is comprised of over 70 government, nonprofit, and faith-based organizations that offer some type of Reentry service for consumers." Doc. 16. Since none of the organizations at issue or the Defendants were acting in their capacity as a state actor at the time of the allegations, Plaintiff's Complaint must sufficiently allege that the Defendants were acting under the color of law.

Next, accepting that SCRN may receive public funds, this alone is not a basis to convert the organization into a state actor or to establish coercion, control or significant encouragement as explained in the symbiotic relationship test below. Further, control, coercion, and significant encouragement are not assumed simply because the SCRN office is located in a county office building. There are no allegations that describe how the location of the office exerts control or is coercive over the conduct of the organization – especially in light of resource meetings taking place at other locations such as The Front Porch Café. Plaintiff fails to assert any facts that describe how the state is significantly influencing the functioning or actions of the SCRN or any of its affiliate organizations.

Finally, Plaintiff alleges that Defendants were acting under the color of state law because Rochford works for Oriana House, which contracts with the government to provide a residential substance abuse treatment facility. However, courts, including the Ohio Supreme Court, have previously held that the Oriana House is not a state actor or acting under the color of law

sufficient to be held liable for constitutional violations. *See Patterson v. Oriana H., Inc.*, 1:10 CV 2868, 2011 WL 1630124, at *2 (N.D. Ohio Apr. 29, 2011) ("Oriana House is not subject to suit in a *Bivens* action. Oriana House is a private, independent, nonprofit corporation. *See State ex rel. Oriana House, Inc. v. Montgomery,* 110 Ohio St.3d 456, 854 N.E.2d 193 (2006) (finding Oriana House to be a private non-profit corporation, not a governmental entity). It is not a public office or a public institution. *Id.; see State ex rel. Carrion v. Nunez,* No. 91910, 2009 WL 1965285, at *3 (Ohio App. 8 Dist. July 7, 2009) (finding Oriana House and its employees are not public entities subject to mandamus)).

The facts alleged in Plaintiff's Complaint do not demonstrate that the government acted with such control, coercive power, or significant encouragement that SCRN or the Defendants turned from private actors into state actors. Plaintiff cannot state a claim under the state compulsion test.

### b. Symbiotic Relationship or Substantial Nexus Test

> Under the substantial nexus test, a private party's conduct "constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Wolotsky*, 960 F.2d at 1335. The Sixth Circuit has not established a legal framework for deciding whether a sufficiently close nexus exists; each case must be evaluated on its own facts. *Lansing*, 202 F.3d at 830. That being said, however, Supreme Court and Sixth Circuit precedent have identified several factors which, in and of themselves, are insufficient bases for finding the existence of a close nexus.
>
> Neither "significant or even total engagement in performing public contracts" nor "extensive and detailed" state regulation of a private entity creates a sufficient nexus between the state and the private entity. *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982); *see Wolotsky*, 960 F.2d at 1336 ("Acts of private contractors do not become the acts of the government by reason of their significant or even total engagement in performing public contracts") (citing *Rendell-Baker*, 457 U.S. at 840-841.)

\* \* \*

> …[T]he federal courts have identified facts that, if alleged alone, do not, as a matter of law, satisfy the burden of pleading state action. These facts include allegations limited to extensive government regulation and receipt of government funds. Courts, for example, have held that "[i]t is well established...that private hospitals, even those receiving federal and state funding and tax exempt status, are not state actors under § 1983." *Grant v. Trinity Health-Mich.*, 390 F. Supp. 2d 643, 657 (E.D. Mich. 2005); *see also Crowder v. Conlan*, 740 F.2d 447, 449-453 (6th Cir. 1984) (concluding that a private hospital is not a state actor for purposes of § 1983 even though it derived revenue from government sources, was heavily regulated, had public officials on its board of directors, and was purchased by the county and leased back to the board of trustees); *Jackson v. Norton-Children's Hosps., Inc.*, 487 F.2d 502, 503 (6th Cir. 1973), *cert. denied*, 416 U.S. 1000 (1974) (finding that a private hospital was not a state actor even though it received public funds and was heavily regulated, stating that "[w]henever state action has been discovered in activities of an ostensibly private hospital something more than a partial federal funding is involved"); *Sarin v. Samaritan Health Ctr.*, 813 F.2d 755, 759 (6th Cir. 1987) (holding that the plaintiff failed to state a § 1983 claim because state regulation of a hospital and receipt of Medicare and Medicaid funds were insufficient to establish state action).

*Kendell v. Peng*, 2:16-CV-221, 2016 WL 4239927, at *2-3 (S.D. Ohio Aug. 11, 2016).

Here, Plaintiff alleges the same facts that courts have previously identified as failing to "…satisfy the burden of pleading state action." Plaintiff alleges that Defendants are acting under the color of law because Rochford works for Oriana House, which is subject to government regulation, Oriana House receives government funds, and Macchione works for a government agency and also serves on SCRN's board of directors. As noted above, courts have found these allegations, alone, are insufficient as a matter of law to plead state action or action taken under the color of law under the symbiotic relationship / substantial nexus test. *See e.g. Grant v. Trinity Health-Mich.*, 390 F. Supp. 2d 643, 657 (E.D. Mich. 2005); *Crowder v. Conlan*, 740 F.2d 447, 449-453; *Kendell*, 2:16-CV-221, 2016 WL 4239927, at *2-3.

As discussed previously, Macchione's work as an SCRN board member does not convert the SCRN into a state actor or cause the organization to be acting under the color of state law.

Likewise, as a matter of law, previous courts have held that merely receiving government funds or being subject to extensive government regulations is not state action by a private actor. *Kendell*, 2016 WL 4239927 at *2-3. Plaintiff does not state a claim under the symbiotic relationship test.

### c. Public Function Test

"The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections…or eminent domain." *Wolotsky*, 960 F.2d at 1335 (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978) and *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 352 (1974)). In this case, providing services, job training, counseling, and other assistance to prisoners re-entering society has not traditionally been exclusively reserved to the state. Thus, Plaintiff fails to state a claim under the public function test.

Given all of this, the Plaintiff fails to a state claim for violation of his constitutional rights under any of the three tests for state action.

### 2) Deprivation of Constitutional Rights

Even if Plaintiff had sufficiently pled factual allegations of state action, Plaintiff has not stated a violation of constitutional rights. Plaintiff alleges that he previously attended ex-offender support meetings hosted by non-state actors (SCRN and The Front Porch) and that his rights to freedom of expressive association and freedom of speech were infringed when he was told that he could not attend these meetings. However, 42 U.S.C. § 1983 is not an independent source of constitutional rights. *See, e.g., Cabaniss v. City of Riverside,* 231 Fed. Appx. 407, 412 (6th Cir., Apr.6, 2007).

> Rather, § 1983 "operates as a vehicle to assert violations of other constitutional rights." *Cabaniss,* 231 Fed. Appx. at 412 (citing *Graham v.*

*Connor,* 490 U.S. 386, 393-94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Accordingly, "in order to bring a § 1983 claim, a plaintiff must begin by identifying a violation of an existing constitutional right." *Cabaniss,* 231 Fed. Appx. at 412 (citing *Waters v. City of Morristown,* 242 F.3d 353, 358-59 (6th Cir.2001)).

*Reilly v. Michigan Dept. of Corrections*, 1:09-CV-892, 2010 WL 2584168, at *3 (W.D. Mich. June 24, 2010). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States…." *West v. Atkins*, 108 S. Ct. 2250, 2254–55 (U.S. 1988).

Here, even assuming all of the Plaintiff's facts are true, Plaintiff did not have a constitutional right to attend the reentry meetings, hosted by non-governmental organizations in a non-governmental setting. Even considering Macchione's employment by Jobs and Family Services, admittedly a state agency, and assuming Macchione told the Plaintiff that he was not allowed to attend further SCRN meetings, then Macchione told a non-employee not to attend a meeting that Plaintiff had no constitutional right to attend. This action does not state a §1983 claim as a matter of law.

### 3) Conspiracy Claims

In his Complaint, Plaintiff alleges that:

> 98. Defendants Comrie, Rochford, Macchione, and Crabbs actively joined and participated in a single plan to remove plaintiff from any participation in SCRN by making good on a pledge to ban plaintiff from SCRN consisting of using employees of the SCRN office and [Oriana House] employees under the direct control and supervision of Defendant Bernard Rochford, for purposes of concocting and propagating false accusations of stalking, sexual harassment, and inappropriate behavior against plaintiff, while using plaintiff's criminal conviction as the central cohesive element for purposes of lending a pseudo-credence to their malicious accusations.

Doc. 1 at ¶98. Plaintiff also alleges that Defendants conspired to "ban the plaintiff from [the Ohio Means Job Center] premises and foreclosing on any means of plaintiff participating in SCRN or accessing any of the publicly available resources centralized at [the Ohio Means Job Center]." Doc. 1 at ¶100. Finally, he asserts that:

> 101. …[B]oth Defendants Macchione and Crabbs joined forces by initiating a meeting with plaintiff's employer to represent the false accusations of Defendant Comrie and Bobbi Snider and gave notice that they had decided to prohibit plaintiff from attending the SCRN Peer Support Meeting at the premises which is partially owned, and/or operated, and/or functions under the control and influence of Defendant Crabbs, who was acting in furtherance of the general conspiratorial objective of ostracizing and penalizing plaintiff through their overt acts of banning plaintiff from participation in SCRN and Summit County reentry, without due process of law.

A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). "Thus, to establish a claim of civil conspiracy, plaintiff must allege: (1) a malicious combination; (2) of two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*, 476 F.Supp.2d 809, 827 (S.D.Ohio 2007) (citing *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 640 N.E.2d 863 (1995)). "Therefore, in order to state a conspiracy claim under § 1983, a plaintiff must plead the conspiracy with some degree of specificity." *Hickey v. Hollister*, 19 F.3d 18 (6th Cir. 1994). Private actors can only be held liable under Section 1983 if their "actions so approximate state action that they may be fairly attributed to the State." *Lansing v. City of Memphis,* 202 F.3d 821, 828 (6th Cir.2000).

As discussed above, the Defendants are not acting under color of state law in their work on behalf of SCRN or The Front Porch Café. Furthermore, the Plaintiff has not alleged specific

facts showing a deprivation of constitutional rights. Consequently, he has not pled an unlawful act independent from any alleged conspiracy. Plaintiff fails to state a claim for conspiracy in violation of §1983.

### C. Claims for Vagueness and Intentional Infliction of Emotional Distress

Finally, in his original Complaint, Plaintiff alleged state law claims for intentional infliction of emotional distress and vagueness. Plaintiff filed a motion to amend the Complaint, which Amended Complaint withdraws these two claims. As discussed below, the Court grants the motion to amend in part to allow the withdrawal of these claims, and the Court will not discuss them further.

### D. Conclusion

Construing the Complaint in the light most favorable to the Plaintiff and accepting all well-pled factual allegations as true, Plaintiff has not stated a claim upon which relief can be granted. As such, Defendants' respective motions to dismiss are GRANTED.

## Motions to Strike Plaintiff's Affidavit

In response to Defendants' motions to dismiss, Plaintiff filed a brief in opposition that attached his affidavit. In this affidavit, he gives additional facts and attaches additional documents outside of his original Complaint. Defendants have all filed a motion to strike the affidavit and attached documents. Docs. 19-21. This affidavit is outside the pleadings, and the Court will not consider it. As such, the motions to strike are GRANTED.

## Motion to Amend Complaint

Plaintiff filed a motion to amend his Complaint in order to add an additional defendant and an additional claim for violation of his Eighth Amendment constitutional rights. Docs. 22, 22-1. In Plaintiff's proposed Amended Complaint, he withdrew his claims for vagueness and

intentional infliction of emotional distress. Docs. 22, 22-1. For the following reasons, Plaintiff's motion to amend is GRANTED IN PART and DENIED IN PART.

Pursuant to the Federal Rules of Civil Procedure, leave to amend shall be "freely give[n] ... when justice so requires." Fed.R.Civ.P. 15(a)(2). However, "[a] motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citing *Ford v. Ford*, 371 U.S. 187, 83 (1962)). A proposed amendment is futile if the amendment would not withstand a motion to dismiss. *See Smith v. Chattanooga*, 2009 WL 3762961 (E.D.Tenn. Nov. 4, 2009) (finding an amendment futile because it would be barred by the statute of limitations); *Render v. Forest Park Police Dept.*, 2009 WL 1788342 (S.D.Ohio June 23, 2009 (same). *See also Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000); *Thiokol Corp. v. Dep't of Treasury, State of Mich.*, 987 F.2d 376, 382-83 (6th Cir. 1993)).

Here, Plaintiff seeks to add Lori Pesci, whom he describes as the Deputy Director of Public Safety at the Summit County Office of Justice Affairs. Doc. 22-1. While he describes her alleged job duties as they relate to offender reentry issues on behalf of the county, Plaintiff does not allege specific facts that Pesci organized, orchestrated, or was otherwise involved with asking Plaintiff to refrain from attending SCRN meetings. Also, Plaintiff has not alleged facts that Pesci's job duties converted Defendants into state actors. Including Pesci in an amended complaint would not state a claim upon which relief can be granted. Thus, allowing Plaintiff to amend the Complaint to add Pesci would not withstand a motion to dismiss.

Likewise, adding a §1983 claim for violation of Plaintiff's Eighth Amendment rights does not state a claim upon which relief can be granted. "The primary purpose of [the Eighth Amendment] has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes; the nature of the conduct made criminal is ordinarily relevant only to the fitness of the punishment imposed." *Powell v. State of Tex.*, 392 U.S. 514, 531–32 (1968) (emphasis added) (citing *Trop v. Dulles*, 356 U.S. 86 (1958); *State of Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459 (1947); *Weems v. United States*, 217 U.S. 349 (1910)). "A charge of cruel and unusual punishment cannot be anchored in a bare assertion of a purely subjective condition unsupported by physical manifestations of injury." *Kent v. Johnson*, 821 F.2d 1220, 1229 (6th Cir. 1987).

Here, Plaintiff has not alleged that he was incarcerated or that he was otherwise subjected to punishment for "violation of criminal statutes." Instead, he alleges damages for nonphysical injuries of embarrassment, humiliation, and denial of access to meetings and their resulting resources. Plaintiff has not pled facts that state a claim for violation of his Eighth Amendment rights.

To the extent that the Amended Complaint seeks to withdraw Plaintiff's claims for vagueness and intentional infliction of emotional distress, the Court GRANTS Plaintiff's motion to amend. However, to the extent that Plaintiff seeks to add another defendant or a claim for violation of his Eighth Amendment rights, the motion to amend is DENIED as futile.

Defendants Comrie and Rochford filed a motion to dismiss the Amended Complaint. Consistent with the Court's ruling on Plaintiff's motion to amend, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART as MOOT.

## IV. CONCLUSION

Construing the Complaint in the light most-favorable to Plaintiff and accepting all well-pled factual allegations as true, the Court orders as follows:

1) Motion to dismiss for failure to state claim filed by Defendants Comrie and Rochford is GRANTED. Doc. 6.

2) Defendant William Macchione's motion to dismiss for failure to state a claim is GRANTED. Doc. 12.

3) Motion to dismiss for failure to state a claim filed by Defendant Crabbs is GRANTED. Doc. 17.

4) Motion to strike affidavit and documents from Plaintiff's reply and opposition to Defendants' motion to dismiss filed by Defendants Comrie and Rochford is GRANTED. Doc. 19.

5) Motion to strike Plaintiff's affidavit filed by Defendant Crabbs is GRANTED. Doc. 20.

6) Motion to strike Plaintiff's affidavit filed by Defendant Macchione is GRANTED. Doc. 21.

7) Plaintiff's motion for leave to file attached Amended Complaint is GRANTED IN PART and DENIED IN PART. Doc. 22.

8) Motion to dismiss Plaintiff's amended complaint for failure to state a claim filed by Defendants Comrie and Rochford is GRANTED IN PART and DENIED IN PART as MOOT. Doc. 23.

IT IS SO ORDERED.

DATE: March 21, 2018
*/s/ John R. Adams*
Judge John R. Adams
UNITED STATES DISTRICT COURT